UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | GRAND JURY 19-3 |
| | ) | |
| JOHN DOE 2010R03793 | ) | |

REDACTED

---

**OBJECTIONS TO COMPELLING MR. HAMMOND'S TESTIMONY BEFORE THE
GRAND JURY AND MOTION FOR A "JUST CAUSE" HEARING**

**Statement of Motion**

Jeremy Hammond, by and through counsel, hereby moves this Court to preclude the

government from compelling Hammond's testimony before the grand jury for "just cause," or in

the alternative, be granted an evidentiary hearing where he may present his just cause objections

and where the government is required to answer these allegations and demonstrate the necessity

for Mr. Hammond's testimony.

Mr. Hammond re-asserts that he has just cause to refuse to answer any questions because

the instrument that the government used to summon his testimony does not comply with the

threshold requirements of 28 U.S.C. §2241(c)(5) for notice and showing necessity that apply to

subpoenas and also the writ of habeas corpus ad testificandum used in securing the testimony of

incarcerated witnesses. That said, it is also clear, from the questions that Mr. Hammond was

asked, that the government's purpose, in calling Mr. Hammond, was not to further any legitimate

grand jury inquiry regarding criminal conduct by others, but rather, to harass Mr. Hammond and coerce his contempt.

The government already has the answers it claims to be seeking in compelling Mr. Hammond to testify

---

Given the breadth of information already in the government's possession, and from the questions that Mr. Hammond was asked – and refused to answer – the government cannot credibly dispute the fact that it already has all of the answers it seeks. Coercing Mr. Hammond to appear before the grand jury serves no legitimate investigative purpose, and it is instead calculated to harass him.

Mr. Hammond also objects to these questions on the basis of the fact that they are engineered to coerce his contempt. Mr. Hammond's principled views are well-known. For many years, Mr. Hammond has been resolute and outspoken in his refusal to cooperate with the government and put other activists in jeopardy. Before pleading guilty in the Southern District of New York in 2013, Mr. Hammond refused all entreaties by the government to cooperate. When he eventually agreed to plead guilty, Mr. Hammond did so believing that his decision to accept responsibility for his own actions – without the benefit of cooperation – signaled the end of the government's efforts to coerce him into betraying others or silence his political opposition to the government.[2] His refusal to cooperate with the government came at a heavy cost – Mr. Hammond was sentenced to the maximum sentence available for the charge under which he was convicted.

Neither Mr. Hammond nor his counsel anticipated that the government would return to him only months before his release from a ten-year sentence in federal prison and threaten to

---

[2] At the time he pled guilty, Mr. Hammond made the following statement:

> Today I pleaded guilty to one count of violating the Computer Fraud and Abuse Act. This was a very difficult decision. I hope this statement will explain my reasoning. I believe in the power of the truth. In keeping with that, I do not want to hide what I did or shy away from my actions. This non-cooperating plea agreement frees me to tell the world what I did and why, without exposing any tactics or information to the government and without jeopardizing the lives and well-being of other activists on and offline.

indefinitely prolong his imprisonment if he did not now do that which he resolutely declined to do in 2012 –

. Mr. Hammond did not cooperate at a time when it was clear his cooperation would have been richly rewarded with a far more lenient sentence for himself, and he will not cooperate now under the penalty of additional time in prison nor should he be compelled to provide answers before the grand jury because: (1) these questions are not asked in good faith; and (2) the government already knows the answers to the questions it seeks to ask him.

4

Given the foregoing, the only logical conclusions that can be drawn from the government's insistence on hauling Mr. Hammond before the grand jury is that the government's questions are designed to harass Mr. Hammond, and extend his punishment by coercing contempt or setting a chilling example to others. These motivations constitute abuse of the grand jury process. Additionally, the government's efforts to elicit testimony have been excessive and violate Mr. Hammond's due process rights. Accordingly, the Court should preclude Mr. Hammond's appearance before the grand jury and permit him to return to FCI Memphis, so that he can complete his ten-year sentence; or, he must be permitted a hearing where he can present his "just cause" defense and where the government is required to answer these allegations and demonstrate the necessity for Mr. Hammond's testimony.

**The Grand Jury Proceedings**

On September 12, 2019, Mr. Hammond appeared before the grand jury.

---

[5] The recitation of facts outlined here comes from Mr. Hammond's memory and the representations made by the government at our January 12, 2019 court appearance. Despite requests, the government has refused to provide us with a copy of the transcript Mr. Hammond's grand jury testimony.

This Court held a closed hearing, during which time the government asked for Mr.

Hammond to be held in civil contempt. Defense counsel objected on the basis of not being

provided sufficient time to prepare specific objections to the questions above. Though counsel

did not lodge any specific objections to the grand jury questions at that time, the Court overruled

defense counsel's objections and ordered Mr. Hammond to appear before the grand jury and

"answer fully the seven questions to which he objected." Order (Under Seal), *United States v.*

*John Doe 2010R03793*, Grand Jury 19-3 (E.D.V.A. Sept. 12, 2019).

At the conclusion of the September 12, 2019 proceeding, counsel requested a transcript of the court proceedings from the government so that counsel could properly prepare objections to the questions that had been posed to Mr. Hammond. The government refused. The government has similarly refused to provide counsel with a copy of the transcript of Mr. Hammond's grand jury testimony.

## I.  MR. HAMMOND HAS "JUST CAUSE" TO REFUSE TO ANSWER GOVERNMENT'S QUESTIONS BECAUSE HE WAS IMPROPERLY SUMMONED BEFORE THE JURY

The availability of a "just cause" defense to refusing to provide testimony in grand jury proceedings is explicitly provided in Section 1826, which governs recalcitrant witnesses. 28 U.S.C. § 1826.[6]  A defective instrument such as an unauthorized subpoena is grounds for a just cause defense for refusal to comply with the grand jury proceedings. *See, e.g., In Re Sealed Case*, 827 F.2d 776 (D.C. Cir. 1987) (holding that it was appropriate for a witness to challenge a subpoena for lacking authority by the issuing entity as a "just cause" defense in contempt proceedings).

As discussed at length in Mr. Hammond's motion for an order to show cause, the device used by the government to summon his testimony, the "Request of United States Attorney for Production of Federal Prisoner in the Custody of the United States," pursuant to 18 U.S.C. § 3621(d), was intended to serve as a writ of habeas corpus ad testificandum, used to secure a prisoner's appearance before a grand jury for testimony, pursuant to 28 U.S.C. § 2241(c)(5). The writ is the functional equivalent of a subpoena, and the same procedures under Rule 17 of the

---

[6] "Whenever a witness in any proceeding before ... (a) grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ... the court ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony ...." 28 U.S.C. § 1826.

7

Federal Rules of Criminal Procedure apply. When 18 U.S.C. § 3621(d) was enacted in 1984, there is no indication that it dispensed with the showing required for compelling a prisoner's appearance for testimony before a grand jury.

Here, the government bypassed the notice requirements under Rule 17 that applies to subpoenas as well as writs of habeas corpus *ad testificandum*.[7] Furthermore, a writ seeking to compel a prisoner's appearance in court to testify may also only be issued if the prisoner's testimony is "necessary." 28 U.S.C. § 2241(c)(5). Establishing the need for Mr. Hammond's testimony was, therefore, a threshold requirement of the immunity compulsion order that the government obtained from this Court pursuant to 18 U.S.C. § 6003.

In granting the government's application, the Court found that it was "satisfied that the testimony or other information from the witness may be necessary in the public interest." Order (Under Seal), *United States v. John Doe 2010R03793,* Grand Jury 19-3 (E.D.V.A. Aug. 20, 2019). However, as discussed in greater detail in Mr. Hammond's motion for an order to show cause, the court has discretion over whether the government has met its burden in demonstrating that a witness's testimony is "necessary" for the purposes of a subpoena, and thus has a duty to provide greater judicial oversight than the minimal "public necessary" showing for immunity compulsion orders. Motion for an Order to Show Cause, n. 27. Furthermore, the application for the immunity compulsion order was submitted *ex parte*, leaving counsel with no opportunity to respond to the requisite "necessity" arguments offered by the government in support of its request.

---

[7] 28 U.S.C. § 2241(c)(5) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [i]t is necessary to bring him into court to testify or for trial."

In its response in opposition to Mr. Hammond's motion for an order to show cause, the government did not address these statutory arguments. Instead, the government relied on sweeping assertions related to the "broad investigative powers of the grand jury" to argue that notice and a preliminary showing of necessity were not required. Government's Response in Opposition to Motion for an Order to Show Cause, at 2. In a one-page summary order dated September 11, 2019, this Court denied Mr. Hammond's motion, without addressing the merits of this argument – or any of the arguments raised by Mr. Hammond. Here, Mr. Hammond re-asserts his arguments from his September 10, 2019 motion in support of an order to show cause that the "writ" that the government used to compel his testimony was statutorily defective, and for that reason, provides a "just cause" defense for refusing to testify. So that this issue can be fully and fairly litigated before this Court, we ask the Court to compel the government to respond to counsel's arguments and to provide counsel with the application it made to secure an order under 18 U.S.C. § 6003.

## II. MR. HAMMOND HAS ESTABLISHED "JUST CAUSE" TO REFUSE TO ANSWER THE QUESTIONS BECAUSE THEY ARE HARASSING, DESIGNED TO COERCE CONTEMPT, AND VIOLATE HIS FIRST AMENDMENT RIGHTS

In its response in opposition to Mr. Hammond's motion for an order to show cause, the government contended that arguments related to abuse of the grand jury process were speculative because he had not yet heard the questions. Government's Response in Opposition to Motion for an Order to Show Cause, p. 4. Having now heard the government's questions, Mr. Hammond's arguments that the government is engaged in a baseless fishing expedition designed to harass him and coerce contempt have been more than substantiated.

9

government knows Mr. Hammond will never testify—revealing that the government's true

purpose is to harass Mr. Hammond and to coerce his contempt. Additionally, the government's

question impermissibly encroach upon protected First Amendment rights. *See Ealy v. Littlejohn*,

569 F.2d 219, 230–31 (5th Cir. 1978) (holding that the grand jury's questions were improper

because they abridged the associational and free speech rights of compelled witnesses); *see also*

*Levinson v. Attorney General*, 321 F. Supp. 984 (E.D.P.A. 1970) (holding that questions that

inquired into the veracity of a defendant's religious beliefs could be precluded from grand jury

investigation).

Thus, Mr. Hammond has "just cause" to refuse to answer the government's seven

proffered questions and any further questions in connection with these proceedings.

**III.    BEFORE MR. HAMMOND CAN BE JAILED FOR CONTEMPT, DUE PROCESS REQUIRES THAT HE RECEIVE AN OPPORTUNITY TO PRESENT HIS DEFENSES AND PROBE THE GOVERNMENT'S EVIDENCE**

In a civil contempt proceeding, the burden of proof rests with the party seeking the

contempt order, which must be proved by clear and convincing evidence. As the Fourth Circuit

held in *United v. Ali*, 874 F.3d 825 (4th Cir. 2017):

> To establish civil contempt, a complainant must prove the following by clear and
> convincing evidence:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*Id.* at 831

The Supreme Court has discussed the *prima facie* case in a civil contempt proceeding as the burden of showing a "willful failure." *See McPhaul v. United States,* 364 U.S. 372, 379, (1960) ("The Government's proof at the trial thus established a *prima facie* case of *willful* failure to comply with the subpoena.") (emphasis added).

Given that Section 1826 (a) provides for the confinement of a recalcitrant witness who, "without just cause shown" declines to testify before a grand jury despite a court order, "[i]t seems axiomatic that before a district court may hold that a witness lacks just cause it must permit him to raise such defenses as he has to present." *In re Brummitt,* 608 F.2d 640, 643 (5th Cir. 1979). Other circuits have found that in all contempt cases, whether civil or criminal, the "procedural regularity" provided in Rule 42(b) of the Federal Rules of Criminal Procedure must be afforded a witness who refuses to testify. *See In Re Sadin,* 509 F.2d 1252 (2d Cir. 1975); *In Re Grand Jury Proceedings,* 486 F.2d 85 (3d Cir. 1973); *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973).

While certain due process standards afforded criminal defendants such as a jury trial are not required in the context of civil contempt, courts have recognized that some baseline minimum protections are necessary under Rule 42(b) given the criminal features of civil contempt. *See In Re Alter,* 482 F.2d 1016 at 1023 (holding that a proceeding in contempt to compel a federal grand jury witness to testify is "civil enough" to foreclose his claim that he has a constitutional right to a jury trial and "criminal enough" to require the application of Rule

13

42(b)). These due process safeguards include notice of the charge against him and the facts upon which it was based, reasonable time to prepare a defense, a right to counsel, and a right to call witnesses. *In re Oliver*, 333 U.S. 257, 275 (1948).

In sum, due process requires that a recalcitrant witness under § 1826(a) be afforded an "uninhibited adversary hearing." *See In Re Alter*, 482 F.2d at 1024. ("The constitutional guarantee of due process of law means more than a silhouette of justice; it requires that judicial determinations affecting the freedom of the individual be openly arrived at after full, fair, and vigorous debate on both sides of all substantial issues.").

Furthermore, these procedural protections may not be curtailed or dispensed with on account of the urgency attached to grand jury proceedings. *See Matter of Kitchen*, 706 F.2d 1266, 1272 (2d Cir. 1983) ("The urgency inherent in any grand jury investigation is not enough to justify eliminating a witness's basic right to a fair hearing before he is imprisoned, whether for civil or for criminal contempt."); *See also In Re Sadin*, 509 F.2d 1252, 1255 (2d Cir. 1975) ("…the proceedings cannot be conducted summarily, and in no event can the time be reduced below a minimum needed to adequately prepare a defense.").

Finally, the hearing ought to be public to the extent compatible with the secrecy of grand jury proceedings. *Matter of Kitchen*, 706 F.2d 1266, 1272 (2d Cir. 1983).

## A. The Government's Burden in a Contempt Proceeding

As outlined by the Ninth Circuit in *Matter of Battaglia*, a contempt proceeding consists of a three-step analysis "that shifts the burden of production to the witness, but always leaves the burden of proof with the government." 653 F.2d 419, 422 (9th Cir. 1981). First, the government

14

must make a *prima facie* showing of contempt, where it must establish that it made an authorized request for information, that the information was relevant to the proceedings, that the information was not already in the possession of the government, and that the witness did not comply. *Id.*

After the government has presented its *prima facie* case, the second step is that the witness must provide some explanation on the record for the failure to comply. *Id.* In *Battaglia*, the witness's claim that he did not remember the events in question satisfied second step. *Id.* Finally, the government was required to carry its burden of proof for a finding of contempt by demonstrating that the witness in fact did remember the events in question, thereby establishing a willful failure to comply. *Id.* at 423.

Here, the government did not attempt to make any showing – beyond listing for the Court the questions Mr. Hammond refused to answer – prior to requesting that he be held in contempt on September 12, 2019. Further, the government has taken no responsibility for this burden, intending, instead, to force the Court – and Mr. Hammond – into a summary proceeding and improperly shifting the burden onto Mr. Hammond, in the first instance, to defend his refusal to testify or be held in contempt.

Beyond improperly shifting the burden to Mr. Hammond, the government has also failed to respond to any of Mr. Hammond's asserted defenses – to provide Mr. Hammond the materials he needs to properly litigate these defenses – or to submit evidence refuting Mr. Hammond's claims. Indeed, Mr. Hammond contends that the government will be unable to meet this burden given the peculiar stance of this case – where the government seeks to compel testimony that it already has in its possession.

15

We ask that the government be held to its burden, and that counsel for Mr. Hammond be given the opportunity to respond, as due process in this matter requires.

**B. Counsel Was Not Afforded Notice or Reasonable Time to Prepare Objections Before They Were Overruled**

At the last grand jury hearing date, Mr. Hammond and counsel were brought before this Court for a contempt proceeding less than an hour after Mr. Hammond appeared before the grand jury. Counsel objected to a summary contempt proceeding on the grounds that counsel did not have sufficient time to prepare specific objections. At that time, and without argument on counsel's objections to the specific questions asked, this Court overruled any and all objections by ordering Mr. Hammond "to appear before the grand jury when it next meets" and to "answer fully the seven questions to which he objected." Order (Under Seal), *United States v. John Doe 2010R03793*, Grand Jury 19-3 (E.D.V.A. Aug. 12, 2019).

This limited proceeding in no way satisfies the procedural protections provided by Rule 42(b). Counsel had not had any time to prepare for Mr. Hammond's defense given that counsel had not been apprised of the questions the government planned to ask beforehand, had minimal time to consult with Mr. Hammond to review his objections, and was not provided with a copy of the transcript of Mr. Hammond's grand jury proceeding.

**C. Mr. Hammond Is Entitled to Evidence Related to Grand Jury Abuse**

A witness who has claimed abuse of the grand jury process may uncover further evidence in support of this contention. *See, e.g., In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973). The party objecting to the compulsion to testify before the grand jury only has the burden of making "some showing of irregularity" bearing in mind that in the case of grand jury subpoenas all the relevant information is usually in the hands of the government. *Id.*

16

Mr. Hammond has raised a credible allegation of abuse of grand jury abuse where, as here, there can be no legitimate reason for the government to require Mr. Hammond to testify to

In order to meaningfully prepare a defense, counsel is entitled a transcript of Mr. Hammond's grand jury testimony. Counsel must also be allowed to review the government's evidence[8] to prove that the government already possesses all of the information it seeks to coerce from Mr. Hammond.

Counsel is further entitled to a transcript of Mr. Hammond's testimony before the grand jury. Counsel is also entitled to a transcript of the grand jury testimony of                    who has undoubtedly already been summoned to testify, or the transcript of the testimony of any federal agent who has been called to summarize the evidence derived from the investigation of                                  Access to these transcripts is vital to Mr. Hammond's just cause defense and the government's refusal to provide counsel with the requested transcripts, we respectfully submit, is further evidence of the government own lack of good faith or ability to meet the "necessity" requirements of the statute. It is Mr. Hammond's good faith belief that the questions the government will seek to ask him in the grand jury are all questions already asked and answered                    Thus, the only purpose in dragging Mr. Hammond from his prison in Memphis is to harass him because the questions propounded by the government lack a legitimate purpose and appear designed to coerce contempt.

---

### D. Before Being Jailed for Contempt, Mr. Hammond Must Be Afforded A Public "Uninhibited Adversary Hearing"

At a contempt hearing, the witness has the right to cross-examine government witnesses and present witnesses on the witness's behalf. *See In re Oliver*, 333 U.S. 257, 275 (1948); *Matter of Kitchen*, 706 F.2d 1266, 1273 (2d Cir. 1983) ("The witness should have the right to call any other witness whose testimony might be relevant to the defense.")

A "perfunctory" hearing that consisted of nothing more than affidavits, a round of oral argument, and some offers for the record was insufficient in *In Re Alter* for the purposes of Rule 42(b) and due process. *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973) Instead, the Ninth Circuit, relying on Supreme Court precedent, held that a witness "be allowed to prove all nonfrivolous defenses to the contempt charge." *Id*.

Before Mr. Hammond can be jailed for contempt, he must be permitted a hearing where he can test the government's assertion that its efforts to compel his testimony are not illegitimate and an abuse of the grand jury function. At this hearing, Mr. Hammond should be allowed to cross-examine F.B.I. agents who can testify

He should also be able to call members of his support committee in his defense who can testify how resolute Mr. Hammond has been in his refusal to cooperate with the government – and how the government's conduct here is an assault on his deeply held principles in violation of the First Amendment.

Finally, the hearing must be public. The Supreme Court has recognized that a contempt hearing bears the imprimatur of a criminal proceeding rather than a grand jury proceeding, and thus the constitutional rights of defendants trump the secrecy considerations of the grand jury. *See In re Oliver*, 333 U.S. 257, 265 (1948) (holding that a grand jury contemnor should be regarded not as "as a witness in a secret grand jury session, but with his rights as a defendant in a

18

contempt proceeding" and thus the judge's powers "must likewise be measured, not by the limitations applicable to grand jury proceedings, but by the constitutional standards applicable to court proceedings in which an accused may be sentenced to fine or imprisonment or both.") Indeed, the Second Circuit has held that it is error for a court to refuse a contemnor's request that the courtroom be open to the public for the contempt trial portion of the proceedings. *In re Bongiorno*, 694 F.2d 917, 921 (2d Cir. 1982)

Given that the witness testimony that the government seeks from Mr. Hammond relates to                   nd his deeply held beliefs, the government's typical arguments relating to preserve the secrecy of the grand jury proceedings would not apply here. Thus, the contempt portion of the proceedings must be held in open courtroom.

## IV.    The Government's Compulsion and Request for Contempt is Excessive and Violates Mr. Hammond's Due Process Rights

At some point, the government's powers to compel testimony give way to due process rights. As Justice Friendly observed in *United States v. Doe*, 405 F.2d 436, 438 (2d Cir. 1968), "[e]ven though evidence is not within a testimonial privilege, the due process clause protects against the use of excessive means to obtain it."

In Mr. Hammond's case, that line has been crossed. From the very inception of this proceeding, the government presumed Mr. Hammond to be a recalcitrant witness and sought to secure a compulsion order without first notifying counsel of its interest in his testimony. Indeed, as if mid-sentence, the government spoke to counsel about its desire to put Mr. Hammond in the grand jury – and before counsel could have any meaningful opportunity to meet with Mr. Hammond, he was pulled out of his program, sent to Oklahoma City, then Pennsylvania, and finally to the Eastern District of Virginia, traversing thousands of miles.

19

The government used unnecessary heavy-handed threats that were not designed to coerce compliance with the grand jury proceedings, but rather to signal that more punishment would be coming Mr. Hammond's way. In a conversation with counsel after seeking the compulsion order, the government let it be known that it intended to stop the clock on Mr. Hammond's criminal sentence should Mr. Hammond fail to comply. The government then pulled Mr. Hammond out of FCI Memphis, knowing that his inability to complete the program alone would extend Mr. Hammond's release date[9] and that his efforts towards completion of the program would be wasted. It must be underscored that the government has gone to such lengths in pursuit of information tha

or all the noise, the government did not ask a single question to which it "needed" an answer.

In sum, the government's efforts here can only be seen here as meting further punishment on a perceived enemy of the state. When the government's tools for compelling testimony cross the line from coercion into punishment, the district court has the discretion, under its supervisory powers, to deny the government's request for a contempt finding and incarceration. *In re Grand Jury Proceedings*, 994 F. Supp. 2d 510, 514 (S.D.N.Y. 2014), citing *Simkin v. United States*, 715 F.2d 34, 37–38 (2d Cir.1983). Given that Mr. Hammond has, in fact, already suffered adverse consequences for his refusal to participate in the government's investigation and proven his resolve that he will never aid the government in the prosecution of others, this Court should

---

[9] After the passage of the First Step Act, Hammond anticipated an approximate release date of late March, 2020. Due to government's compulsion of his appearance of in the Eastern District of Virginia – which resulted in his removal from the RDAP program – Mr. Hammond's release date on the BOP locator has been moved to January 24, 2021.

reject any calls by the government to interrupt his sentence and subject him to unnecessary

incarceration for civil contempt. It would be more appropriate to return him to Memphis so that

he can finish serving the remaining 15 months of a sentence that holds him responsible for

conduct rather than one that punishes him for his views and his principles.

## CONCLUSION

For the reasons set forth above, this Court should find that Mr. Hammond has just cause

to refuse to answer the seven questions that the government proffered, as well as any further

questions, or that Mr. Hammond is entitled to a hearing where he may present his just cause

defense. If this Court finds that a hearing is necessary, counsel must be afforded reasonable time

to prepare for the hearing, as well as provided evidence in the government's possession that

supports his defense, including testimonial and documentary evidence that shows

, as well as

transcripts of the grand jury proceeding dates on which Mr. Hammond

testified. This Court should also exercise its discretion to deny any requests by the government to

interrupt Mr. Hammond's sentence even if it makes a finding of contempt.

Furthermore, counsel requests that this Court set a briefing schedule that will afford Mr.

Hammond adequate due process, including time to meet with counsel so that he can be advised

of his rights and prepare such other and further submissions as may be necessary to preserve

those rights, and ensure the integrity of the grand jury process.

Respectfully Submitted,
JEREMY HAMMOND

By Counsel

21

Dated: October 8, 2019

SUSAN G. KELLMAN
Law Offices of Susan G. Kellman
25 Eighth Avenue
Brooklyn, NY 11217
Tel: (718) 783-8200  Fax (718) 783-8226
sgk@kellmanesq.com
*Admitted Pro Hac Vice*


SARAH KUNSTLER
Law Office of Sarah Kunstler
315 Flatbush Avenue
Brooklyn, NY 11217
Tel: (718) 783-3682  Fax (347) 402-2014
sarah@kunstlerlaw.com
*Admitted Pro Hac Vice*


JEFFREY D. ZIMMERMAN
VA Bar #38858
Jeffrey Zimmerman, PLLC
108 N. Alfred St.
Alexandria, VA 22314
Tel: (703) 548-8911  Fax (703) 548-8935
zimpacer@gmail.com
*Local Counsel*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2019, a true and accurate copy of the foregoing was served on Gordon Kromberg, Assistant United States Attorney, 2100 Jamieson Ave, Alexandria, Virginia, 22314

JEFFREY D. ZIMMERMAN