***UNDER SEAL***

1

```
            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF VIRGINIA
                  ALEXANDRIA DIVISION

------------------------------x
                              :
UNITED STATES OF AMERICA,     : Criminal Action No.
                              :
         versus               : 1:19-dm-50
                              :
JOHN DOE 2010RO3793,          :
                              :
              Defendant.      : September 11, 2019
------------------------------x

          The above-entitled Show Cause Hearing was heard
by the Honorable Anthony J. Trenga, United States District
Judge.

                    A P P E A R A N C E S

FOR THE GOVERNMENT:        GORDON KROMBERG, AUSA
                           THOMAS TRAXLER, AUSA
                           KELEN DWYER, AUSA
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314

FOR THE DEFENDANT:         JEFFREY ZIMMERMAN, Esq.
                           108 N. Alfred Street
                           Alexandria, VA 22314

                           SUSAN KELLMAN, Esq.
                           Law Office of Susan G. Kellman
                           25 Eighth Avenue
                           Brooklyn, NY 11217

                           SARAH KUNSTLER, Esq.
                           Law Office of Sarah Kunstler
                           315 Flatbush Avenue #103
                           Brooklyn, NY 11217

OFFICIAL COURT REPORTER:   MS. TONIA M. HARRIS, RPR
                           United States District Court
                           Eastern District of Virginia
                           401 Courthouse Square, Fifth Floor
                           Alexandria, VA 22314
```

———Tonia M. Harris OCR-USDC/EDVA 703-646-1438

***UNDER SEAL***

3

1         THE COURT: All right. That motion will be granted
2 and they'll will be admitted pro hac.
3         MR. ZIMMERMAN: Thank you, Judge.
4         THE COURT: All right. We're here on Mr. Hammond's
5 motion for a no-show cause why the Government's writ summoning
6 testimony and this Court's immunity compulsion order shall not
7 be quashed, stayed, or vacated.
8         I've reviewed the filing as well as the Government's
9 response. Let me please hear further from counsel.
10        Ms. Kellman.
11        MS. KUNSTLER: Thank you, Your Honor. This is
12 Ms. Kunstler. First of all, I wanted to move the Court to
13 appoint Mr. Zimmerman under 2102020. This Court has the
14 authority to make discretionary appointments under the CJA for
15 a person charged with civil or criminal contempt to state his
16 loss of liberty.
17        I understand we're not at that posture yet.
18        THE COURT: Right.
19        MS. KELLMAN: And hopefully will not be.
20        MS. KUNSTLER: Right, right.
21        MS. KELLMAN: But I -- you know, it's also under
22 (c). I think that was little (b). Under (c), I think, it's
23 also a witness before the grand jury, Court, Congress, or
24 federal agency that this Court has authority to appoint
25 counsel to.

***UNDER SEAL***

5

1 Here, despite asking for it repeatedly, we still
2 don't have the writ that has brought him here. You know with
3 respect --
4 MS. KUNSTLER: And Judge, just to be a little more
5 specific, if we might, in terms of the Government's argument
6 about eleventh hour maneuvering, I discussed, on more than one
7 occasion, with government counsel the fact that we were having
8 difficulty just getting through to the jail where Mr. Hammond
9 was housed. And in fact, the U.S. Attorney represented to me
10 that the marshals, U.S. marshals, were having similar
11 difficulties that nobody was answering the phone at the jail.
12 We also were given an e-mail address and nobody
13 responded to our e-mail. So we've made diligent efforts to
14 reach our client. And when we finally reached him and told
15 him that we would reach out to the government and see what we
16 could figure out, that's when he told us about RDAP. We
17 reached out to the Government and we were in the process, I
18 thought, of trying to arrange to have this interview in
19 Memphis so that our client would not be prejudiced and be
20 taken out of the RDAP program, which essentially means he'll
21 do another, you know, eight to eleven months, I think, in
22 prison. And it was during the time we're having these
23 discussions that our client was moved.
24 The last I had heard was the marshals couldn't even
25 get through to the jail so serve the writ. And then our

***UNDER SEAL***

7

1 here pursuant to a different document, which we haven't seen,
2 and so, therefore, making arguments about it somewhat blind.
3 But to the extent this document was a document produced under
4 18, U.S.C., 3621, we cited in our brief that the legislative
5 history concerning 621 makes it clear that the purpose of that
6 statute was only to simplify the administration of the prison
7 system, and not to alter the authority.
8     So therefore, the same necessity applied -- should
9 apply to this writ we have not seen, as does the writ for
10 habeas corpus. There is nothing -- the government cites talks
11 about the broad powers, the broad investigative powers, but
12 nothing they have cited contravenes that authority -- that
13 statutory authority.
14     Now, the Government has said, and I agree, that they
15 have not had a fulsome opportunity to respond to our brief,
16 nor have they explained the compelling urgency for
17 Mr. Hammond's appearance to be before the 6th of September
18 sitting of this grand jury rather than the October sitting of
19 this grand jury.
20     I don't think that this Court -- I don't think that
21 the government has made compelling or sufficient arguments,
22 but I think they should have time to. We should have time to
23 respond to those arguments. And this issue -- these are
24 serious issues involving serious due process rights that
25 deserve to be briefed, fully briefed and heard. The

***UNDER SEAL***

9

1   Ms. Kunstler: And actually -- this is Sarah
2   Kunstler again. That's not accurate, I should say. Jeremy
3   was never able to call us.
4      MS. KELLMAN: He couldn't call us.
5      MS. KUNSTLER: He -- he, you know -- we received an
6   e-mail over CorrLinks that he had been -- which is not
7   attorney-client privilege notification -- mode of
8   communication, and not a way we can comfortably communicate
9   with our client. So we essentially got an e-mail that they
10  were -- they had asked him to pack up.
11     So we never had -- we were never able to have a
12  second conversation with him at all until this Monday when we
13  met with him at the jail.
14     THE COURT: All right. Anything else?
15     MS. KELLMAN: Could we have just one minute, Judge?
16     THE COURT: Yes.
17     (A pause in the proceedings.)
18     MS. KUNSTLER: The Government has also -- this is
19  Sarah Kunstler again -- Your Honor, the government has also
20  argued that we need to establish abuse of the grand jury
21  process before they should be required to establish necessity.
22  Again, without citing any authority for that and why
23  28, U.S.C., 2241 does not apply here.
24     But despite, you know, despite that, we have made a
25  strong showing of abuse and our showing of abuse here is based

***UNDER SEAL***

11

MS. KELLMAN: Your Honor, Susan Kellman, I apologize, but we lost just Mr. Kromberg's -- the last thing we heard him say --

THE COURT: Ms. Kellman, why don't you hold off. I'll give you an opportunity to respond after Mr. Kromberg is done.

MS. KELLMAN: Okay.

THE COURT: Okay. Mr. Kromberg.

MR. KROMBERG: Thank you, Your Honor. That same case, *R. Enterprises*, said that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority. And that's happened here.

The witnesses -- the witness talks about oh, the law of writs, and they cite it case after case in their brief about defendants seeking to writ state prisoners into their case to testify at trial. That's very different from what we have here and not least because there's no writ in this case, no writ.

A writ is an order of a Court. There's no writ. There is a request signed by one of my supervisors in the U.S. Attorney's Office to the marshal service saying please bring prisoner Jeremy Hammond to the Alexandria jail. So that's what we have. It's not a writ. It's a piece of paper with internal DOJ document, "please bring a prisoner." It has

***UNDER SEAL***

13

us he's not going to talk to us." And through whatever the circumstances were that did not happen.

But we, the government, have bent over backwards, and we've done as much as we can to make this happen with the minimal intrusion into the witness's circumstances as possible. Whatever has happened between the defense attorneys and the jail, I don't know. It didn't work out. We've tried to get this, we scheduled it for grand jury appearance for September 9th, excuse me, September 10th. And Ms. Kellman said, "I can't make it September 10th." I said, "Okay, we'll do it September 11th." And then on last week I said, "Well if you can't make it September 11th, we can postpone it until September 12th, but let's just get it done. And if you don't want to go to the grand jury, let's meet in the conference room and let's do it. But there's no reason to delay things. Let's just do it."

THE COURT: How long do you anticipate your questioning would be? I know it's difficult to be completely precise, but --

MR. KROMBERG: Right.

THE COURT: -- do you have a general sense of how long your questioning would be?

MR. KROMBERG: A couple of hours, Judge. I reserved two hours before the grand jury. But, of course, as you pointed out, it depends if the witness is fulsome and comes

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

***UNDER SEAL***

15

1  And in that case there was a subpoena and so there
2  was something for the parties to challenge.
3      THE COURT: All right. Anything else on this?
4      All right. I've reviewed -- I've reviewed the
5  motion.
6      MS. KELLMAN: And they can't show necessity so all
7  they can say is we don't have to show necessity. And the
8  other thing is that without having an opportunity for the
9  Court to hear us on the issue of whether or not there's really
10 is any necessity, we didn't have a chance to respond to a
11 subpoena or to the order. And there are multiple things that
12 we would respond to --
13     (Telephone disconnection.)
14     THE COURT: Did we get cut off? Hello. We lost the
15 connection.
16     MS. KELLMAN: -- the jail before we had an
17 opportunity to talk to them. And once he was in, you know,
18 FCI arena or Oklahoma we had no ability to talk to him until
19 he got to Virginia. So I just think the case is, under the
20 circumstances here, are very, very different from
21 *R. Enterprises*.
22     The other thing is the government has never, not
23 even today, said to the Court why tomorrow is the -- is
24 absolutely necessary when this is a grand jury that's been
25 sitting for months and months and sits again in October, when

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

***UNDER SEAL***

17

1  of counsel.
2        In assessing the motion, let me first really comment
3  on some of the basic, settled propositions that guide the
4  Court's assessment of Mr. Hammond's motion.
5        The grand jury may compel testimony of witnesses as
6  it considers appropriate in its operation generally and is
7  unrestrained by technical procedural or evidentiary rules in
8  governing the conduct of criminal trials.
9        However, the investigative powers of grand juries
10 are not unlimited and a grand jury is not licensed to engage
11 in arbitrary inquiry nor may they select targets of
12 investigation out of malice with an intent to harass.
13       Here, however, the law presumes, absent a strong
14 showing to the contrary, that the grand jury acts within a
15 legitimate scope of its authority, and the compulsion of
16 testimony before the grand jury is presumed to be reasonable,
17 and the burden of showing unreasonableness must be on the
18 recipient who seeks to avoid its compliance.
19       Where an order to testify before a grand jury is
20 challenged on relevancy grounds, the motion to quash must be
21 denied unless the district determines that there is no
22 reasonable possibility that the testimony will produce
23 information relevant to the general subject of the grand
24 juries investigation.
25       And in that regard, the grand jury is entitled to

***UNDER SEAL***

19

1  produced the body that required jurisdiction for that purpose.
2      Here, however, the custody of Mr. Hammond is already
3  with the attorney general of the United States. Mr. Hammond
4  was already within that custody and not some third party, such
5  as a state authority and all that was required was an
6  administrative order requiring his transfer from one facility
7  to another.
8      Mr. Hammond has also been served with and has
9  received the benefit of an order requiring his testimony,
10 which is akin to a subpoena when the Court issued its immunity
11 order, which requires Mr. Hammond to testify fully,
12 completely, and truthfully before the grand jury with immunity
13 with respect to such testimony. Procedurally, the Court
14 concludes that Mr. Hammond has received all the process to
15 which he was entitled to as well as all the information
16 pertaining to the entry of those orders.
17     I read from the filings that Mr. Hammond argues that
18 the order to testify shall be quashed because it's not
19 necessary. But a grand jury has broad investigative powers to
20 determine whether a crime has been committed and who committed
21 it and its function is to inquire into the information that
22 might possibly bear on its investigation.
23     The witness called before the grand jury is not
24 entitled to interfere with the course of the grand jury's
25 inquiry or to insert objections based on the witnesses own

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

***UNDER SEAL***

21

1  Hammond is ordered to testify before the grand jury on
2  Thursday, September 12th.
3      All right. Is there anything further?
4      MR. KROMBERG: Judge, may we have a moment to
5  confer?
6      THE COURT: Yes.
7      (Counsel confers.)
8      MR. KROMBERG: So, Judge, it's possible that we're
9  going to be -- need to be back before you tomorrow, because I
10 think it's an open question what the witness is going to do at
11 this point.
12     MR. ZIMMERMAN: Judge, if I might?
13     THE COURT: Yes.
14     MR. ZIMMERMAN: Susan and Sarah, are you there?
15     MS. KELLMAN: Yes. And I apologize, but we did not
16 hear the question.
17     The sound goes in and out from time to time. We did
18 not hear Mr. Kromberg's question.
19     MR. ZIMMERMAN: Judge --
20     THE COURT: Mr. Kromberg raised the -- I believe he
21 said it was an open issue whether Mr. Hammond would in fact
22 testify tomorrow and that we may need to be back here
23 tomorrow.
24     MR. ZIMMERMAN: I think if I might, Judge, at this
25 point --

***UNDER SEAL***

23

1  MR. KROMBERG: That will be fine, Judge. What I
2  suggest is -- as you recall from the last time we had -- when
3  the witness did not actually appear before the grand jury,
4  because that seems, under the circumstances, where the witness
5  already says they're not going to testify that might be a
6  waste.
7  If Mr. Zimmerman, Ms. Kellman, and Ms. Kunstler say
8  that at least at this point in September 2019 the witness is
9  not going to testify, then perhaps we can come up here, at the
10  Court's direction of the time, the Court could ask the
11  witness: Are you refusing to testify? If the witness says,
12  Yes, I refuse to testify, then we don't have to go before the
13  grand jury at all.
14  Our grand jury time is scheduled tomorrow for
15  2 o'clock.
16  If the witness is going to testify, that's great.
17  That's ideal. But I would not like to have the situation
18  occur where we don't come before you until after some time
19  after 2 o'clock, the grand jury is dismissed for the day, they
20  don't come back until October, and then the witness says, Oh,
21  okay, I'll testify; because, that puts us in the position of
22  having to wait until October for something that we believe
23  needs to be done now.
24  So I guess what I'm asking you is we need to be
25  before you -- if the answer is the witness is not going to

Tonia M. Harris OCR-USDC/EDVA 703-646-1438
EASTERN DISTRICT OF VIRGINIA

***UNDER SEAL***

25

1 posture where he wants to fully and fairly consider whether
2 he's going to testify and he wants to do it, you know, with
3 the lawyers that he's had for seven years.
4     And so we would submit to the Court that it makes
5 sense to schedule the grand jury for October, and then the
6 Government and the defense can start engaging in these
7 discussions and we can do it with Ms. Kellman and
8 Ms. Kunstler.
9     THE COURT: Mr. Kromberg, what kind of -- what's the
10 time importance --
11     (Telephone disconnection.)
12     MR. KROMBERG: The reason that we were moving the
13 way we're moving is that we -- we have time constraints on us
14 that we're not at liberty to describe with a witness here. If
15 it's appropriate, if the Court is interested, we can explain,
16 but we believe it needs to be done in September, which was why
17 we didn't agree to postpone it until January, as Ms. Kellman
18 first asked, and we have not agreed to postpone until October.
19     If the witness declines to testify tomorrow, it's
20 true, then the next opportunity won't be until the second week
21 in October. We hope that doesn't happen. We hope that, as
22 the Court says, he testifies and we get him out of here and he
23 goes back to where he came from.
24     THE COURT: All right.
25     MR. KROMBERG: Thank you.

***UNDER SEAL***

27

1 submitted a letter to the Court asking the Court to waive the
2 $75 filing fee for the pro hac vice.
3     THE COURT: All right. I'll do that.
4     MR. ZIMMERMAN: Okay. Thank you, Judge.
5     THE COURT: All right. Anything else?
6     MR. KROMBERG: No, Your Honor.
7     THE COURT: All right. Thank you. Court will stand
8 in recess.
9
10     **(Proceedings adjourned at 4:37 p.m.)**

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA